HOFFMAN v S O S CONSOLIDATED, INC

1. LABOR RELATIONS—EMPLOYMENT SECURITY ACT—APPEAL BOARD—
FINDINGS OF FACT.

The Appeal Board of the Employment Security Commission has
authority to make binding findings of fact when supported by
competent, material, and substantial evidence and when so
made they are invulnerable to judicial meddling (MCLA
421.38).

2. LABOR RELATIONS—UNEMPLOYMENT BENEFITS—EMPLOYEE DIS-
CHARGE—VOLUNTARY QUIT.

An employee who had notified his employer that he could not
report to work because he had to appear at the NLRB and for
that reason had been released by his employer as a voluntary
quit cannot later be refused unemployment benefits on the
ground of disqualifying misconduct justifying discharge and
forfeiture of benefits because the Appeal Board of the Employ-
ment Security Commission does not have the authority to find
that an employee was discharged for misconduct when the
uncontradicted testimony is that he was cleared as a voluntary
quit and the separation of an employee who had been released
as a voluntary quit is not disqualifying.

Appeal from Macomb, Edward J. Gallagher, J.
Submitted Division 2 October 12, 1972, at Detroit.
(Docket No. 13256.) Decided February 22, 1973.

Charles Hoffman presented his claim for unem-
ployment benefits from S.O.S. Consolidated, Inc.,
and the Soss Manufacturing Company. Benefits
denied by the appeal board. Claimant appeals.
Reversed and decision of the referee granting ben-
efits reinstated.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] No references.

*Stephen I. Schlossberg, John A. Fillion* and *Jordan Rossen,* for plaintiff on appeal.

*McClintock, Fulton, Donovan & Waterman* (by *William P. Thorpe),* for defendant S.O.S. Consolidated, Inc., and Soss Manufacturing Company on appeal.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George M. Blaty,* Assistant Attorney General, for defendant Employment Security Commission.

Before: V. J. BRENNAN, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J. This is an employment-security-benefit case before us on an appeal of right from an order of the circuit court affirming a determination of the appeal board of the commission.

We are told by the parties that the question of moment to our jurisprudence is the effect of an employee's violation of a "shop rule" as it relates to disqualifying misconduct under the Employment Security Act. (MCLA 421.1 *et seq.;* MSA 17.501 *et seq.)* "Shop rules" in this case, as in the case of most employers of any substantial number of employees, are hammered out on the forge of collective bargaining. Thus they become what our Supreme Court has characterized as part of a "contract", and the case law generally refers to "shop-rule" violations as "violations of contract". Certainly this question is not new to our case law. It has been written to, discussed, analyzed, re-analyzed, distinguished, delineated, repudiated, and

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

reinstated. To reexamine the authority here in a Texas-size anthology might intrigue a legal lexicographer but it would tax a busy intermediate appellate court far beyond any helpful decisional limits. We will strive to capsulize.

Plaintiff-appellant says the present Employment Security Commission Appeal Board has retreated to an antediluvian position by holding that any violation of contract is ipso facto disqualifying misconduct under the act. This contention was ably articulated by an assistant general counsel for one of Michigan's largest unions appearing as appellant's counsel. Counsel further argues that the decision here will be of grave consequence to all employees working under labor contracts.

The employer-appellee, by equally able counsel, says a foreman issued a valid order, disobedience of which violated a shop rule that had been incorporated into a labor contract, and that the violation was by any test statutorily disqualifying conduct.

The Employment Security Commission, also a defendant-appellee, by its able assigned assistant attorney general, takes the same position as the employer.

It would profit nothing to write to the issue as above framed and orally argued. Whatever we were to write would become purely dictum. Although the appeal board made the finding that appellant was discharged on August 26, 1969, this finding was directly contradictory to testimony of the employer-representative that on August 22, 1969, appellant "was released" as a voluntary quit. That same representative testified that on August 25, 1969, "[w]e reinstated Mr. Hoffman without back pay". After this reinstatement the appellant was ordered to report to work, and we quote the

appeal board opinion, "either August 25, 1969, or at the latest, on the morning of August 26, 1969".

On August 26, 1969, the employee notified the employer that he could not report to work because he *"had"* to appear at the NLRB.[1] (Emphasis supplied.) Upon this failure to report he was, in the words of the employer-representative who testified at the referee hearing without contradiction, "cleared out as a voluntary quit". No further testimony was taken before the appeal board.

The board had, of course, the unquestioned right to make binding findings of fact, when supported by competent, material, and substantial evidence. When so made they are invulnerable to judicial meddling. The board, however, does not have the authority to find that an employee was discharged for misconduct when the uncontradicted testimony is that he was cleared as a "voluntary quit". A reviewing court is not bound by such finding of fact.

Therefore, we cannot answer the question of whether the conduct of this employee was disqualifying misconduct justifying discharge and forfeiture of benefits, for the very simple reason that the plaintiff-appellant was not discharged.

So the question becomes whether his voluntary leaving was with good cause attributable to the employer. It was. We cannot hold as a matter of law that where, as here, the record is uncontradicted that on the date the employee was released as a voluntary quit he *had* to appear at the NLRB, his termination was disqualifying.

Hence, this opinion regretably settles nothing except that where the records show an employee "has" to be at the NLRB, and he notifies his employer of this fact, and he is released as a

[1] The National Labor Relations Board.

voluntary quit, his separation is not disqualifying. We suspect there will be precious few cases which will fall into this identical category.

We have read this whole record with particular care. From it we gain the general impression that appellant may well have been a burr under the managerial saddle, possibly even the union's. The outcome of the grievance proceeding held pursuant to the labor contract seems to us to have been eminently fair. The union and management agreed that appellant had to wear his issued safety glasses unless he chose to obtain prescription lenses. In that event he would be reimbursed to the extent provided for by the contract. The matter would better have ended there. It did not. We become faced with an unequivocal record. It said what it said. We cannot go behind it. We cannot let an unappealing case make bad precedential law.

Of necessity we reverse the circuit court and the appeal board and reinstate the decision of the referee holding appellant was not disqualified.

No costs, a public question.

All concurred.